# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LISA SHARP, OBO
J.S., MINOR,
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-523
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Lisa Sharp, on behalf of her minor grandniece, J.S., brings this action pursuant to

42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social

Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI)

childhood disability benefits. This matter is before the Court on plaintiff's Statement of Errors

(Doc. 12), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply (Doc. 17).

## I. Procedural Background

J.S. was born in 2004 and was eight years old at the time of the administrative law judge

(ALJ)'s decision. Plaintiff filed an application for SSI childhood benefits on J.S.'s behalf in July

2010, alleging disability due to severe asthma and attention deficit hyperactivity disorder

(ADHD). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before ALJ Christopher B. McNeil.

Plaintiff and J.S. appeared and testified at the ALJ hearing. On October 3, 2012, the ALJ issued

a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.*; 20 C.F.R. § 416.202. An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P, 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

If an impairment does not meet a listed impairment, disability may nonetheless be established if the child's impairment is medically or functionally equivalent to a listed impairment. A child's impairment is "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria" of a listed impairment. 20 C.F.R. § 416.926. In determining whether a child's impairment(s) functionally equals the listings, the adjudicator must assess the child's functioning in six domains:

2

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be "very seriously limited" when only one activity is limited by the impairment or when several activities are limited by the impairment's cumulative effects. *Id.*

3

If the child's impairment meets, medically equals, or functionally equals an impairment in the listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

## B. The ALJ's findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [J.S.] was born [in] . . . 2004. She was six years old on July 27, 2010, the date her application was filed, and she is currently an eight years [sic] old, 'school age' child (20 CFR 416.926a(g)(2)).

2. [J.S.] has not engaged in substantial gainful activity since July 27, 2010, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. [J.S.] has the following medically determinable impairments: asthma, an attention deficit hyperactivity disorder, and an anxiety disorder (20 CFR 416.924(c)).

4. [J.S.] does not have an impairment or combination of impairments that *meets or medically equals* the severity of Sections 103.03, 112.06, 112.11, or any other section of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. [J.S.] does not have an impairment or combination of impairments that *functionally* equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. [J.S.] was not disabled, as defined in the Social Security Act, at any time since July 27, 2010, the date her application was filed (20 CFR 416.924(a)).

(Tr. 104-115).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

4

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Evidence before the ALJ**

At the request of the state agency, Dr. Silvia Vasquez, M.D., Dr. Patricia Semmelman, Ph.D., and Karen Carver, M.A., C.C.C./S.L.P., reviewed the record and completed a Childhood

Disability Evaluation Form in June 2009.[1]  (Tr. 469-74).  J.S.'s impairments were listed as

ADHD, asthma, and language delay.  (Tr. 469).  In evaluating J.S.'s limitations in the six

regulatory functional domains, the reviewing sources relied on the records from J.S.'s preschool

program, St. Agnes Head Start, and the medical records generated by J.S.'s pediatrician, Dr.

William Cotton, M.D., and Nationwide Children's Hospital, where J.S. received pediatric care.

(Tr. 471-72).  They concluded that J.S. had "less than marked" or "no limitation" in each of the

six regulatory functional domains except "attending and completing tasks," where J.S. was found

to have "marked" limitation.  (Tr. 471).  The reviewing sources specifically cited the following

evidence in support of their conclusion finding a "marked" limitation in this functional domain:

(1) a July 2008 office visit treatment note from Nationwide Children's Hospital stating that J.S.'s

ADHD was well-controlled; (2) an October 2008 treatment note from Dr. Cotton stating that J.S.

has ADHD, she was started on Adderall in the spring, but she was still hyperactive; and (3) the

St. Agnes Head Start records which reflected moderate problems in this domain and

demonstrated that J.S. had an extremely short attention span, she was very easily distracted, and

she needed constant attention to stay on task.  (*Id.*).  The reviewing sources concluded that J.S.'s

condition as a whole did not meet, medically equal, or functionally equal a listed impairment.

(Tr. 469).

Consultative examining psychologist Dr. Scott Lewis Donaldson, Ph.D., evaluated J.S. in

connection with her application at age 6 years, 10 months, and issued a Psychological Evaluation

---

[1] The review and evaluation was in connection with a prior disability application submitted on J.S.'s behalf.  (Tr. 74).  It appears Dr. Vasquez, a medical doctor, completed the portion of the form pertaining to J.S.'s physical impairments while Dr. Semmelman, a psychologist, completed the portion of the form related to J.S.'s mental impairments.  (Tr. 469-74).

on December 27, 2010. (Tr. 880-883). Plaintiff reported to Dr. Donaldson that J.S. had resided

with her since she was three days old. (Tr. 880). Plaintiff reported that J.S. was over-reactive to

sounds, she had fears, phobias, and outbursts, she had been on medication for ADHD since she

was three years old, and she suffered from eczema and asthma. (*Id*.). Plaintiff stated that J.S.

had repeated the first grade and that she had difficulties completing assignments. (Tr. 881).

Plaintiff also reported that J.S. manifested behavioral problems in that she experienced frequent

crying spells and exhibited many fears, but her relationships with her teachers and fellow

students had not been problematic. (*Id*.). Plaintiff reported that J.S. had participated in

counseling at the Children's Hospital Behavior Health Center. (*Id*.). Plaintiff described J.S. as

capable of communicating in complete sentences and her speech as both coherent and

intelligible; she reported that J.S.'s eye contact was adequate but she was easily distracted,

although able to follow directions; she was not withdrawn but was distant, moody and shy; and

she fidgeted and was hyperactive. (*Id*.). Her interactions with the consultative examiner were

appropriate and she did not exhibit overt signs of hyperactivity. (*Id*.).

      In connection with the consultative examination, J.S. was administered the WISC-IV test

to evaluate her intellectual abilities. (Tr. 881-82). She was diagnosed with ADHD Combined

Type and Anxiety Disorder NOS. (Tr. 882). She was assigned a GAF score of 55 to 65. (*Id*.).

Dr. Donaldson concluded that J.S.'s cognitive abilities appeared to fall at or slightly below age

appropriate levels; J.S.'s communication skills appeared to be age appropriate; visuo-motoric

speed and accuracy possibly fell at four-fifths of appropriate age levels; her emotional

functioning fell at three-fourths of the age appropriate level; her personal/behavioral patterns

were estimated to fall at age appropriate levels; and J.S. manifested difficulties with

concentration, persistence and pace and plaintiff reported J.S. had difficulty focusing and

sustaining attention, so that her ability in this area was estimated to be three-fourths of what

would be considered to be age appropriate.  (Tr. 883).

At the request of the state agency, Dr. Malika Haque, M.D., Karen Carver, M.A., C.C.C.,

and Dr. Steven M. Meyer, Ph.D., issued a Disability Determination Explanation in February

2011, based on their review of the medical evidence of record, educational records, speech

therapy records, and information provided by plaintiff. (Tr. 75-84).  J.S.'s impairments were

listed as asthma, ADHD, and anxiety disorders. (Tr. 79).  These reviewing sources concluded

that J.S. had "no limitations" or "less than marked" limitations in each of the six regulatory

functional domains except "health and physical well-being," where J.S. was found to have

"marked" limitation. (Tr. 81).  Dr. Haque found that J.S. has "mild, persistent asthma" as

demonstrated by an October 2009 chest x-ray which showed "mild perihilar bronchial wall

thickening bilaterally" and five documented emergency room visits over the preceding year due

to asthma exacerbations. (Tr. 81).  Dr. Haque concluded that J.S.'s asthma was severe but it did

not meet or equal the listings. (Tr. 81).

At the request of the state agency, Dr. Louis Goorey, M.D., Dr. Caroline Lewin, Ph.D.,

and Lisa Lynch, M.A., C.C.C./S.L.P., reviewed the evidence at the reconsideration level and

issued a disability evaluation in May 2011. (Tr. 86-95).  They considered Listings 103.03 for

asthma, 112.11 for ADHD, and 112.06 for anxiety disorders. (Tr. 91).  The reviewing sources

concluded that J.S. had "less than marked" or "no limitation" in all functional domains with the

exception of health and physical well-being, in which she still had "marked" limitation. (Tr. 92-

93).  They noted that trees and grass had been added to her allergy list and she had suffered an

8

exacerbation of her asthma on November 2, 2010, for which she was prescribed a five-day course of Prednisone. (Tr. 93). They also determined that psychological evaluation showed ADHD and anxiety with some limits in J.S.'s ability to concentrate for extended periods of time and relating to others appropriately. (Tr. 94). The reviewing sources nonetheless concluded that although J.S. has severe conditions, she is not totally disabled within the meaning of the law. (*Id*.).

### E. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ's decision was not based on substantial evidence because the ALJ failed to address J.S.'s psychiatric impairments, with the exception of her ADHD; (2) the ALJ's finding that J.S.'s impairments did not functionally equal a listed impairment is not supported by substantial evidence; and (3) the ALJ's credibility analysis is not supported by substantial evidence. (Doc. 12). Because plaintiff's arguments in support of the first two assignments of error allege that the ALJ erred by failing to find marked limitations in two or more domains of functioning, the Court has combined these assignments of error and considered them together. For the reasons that follow, the undersigned finds that the ALJ erred in finding that J.S.'s impairments do not functionally equal the listings and in rendering a credibility finding that is not supported by substantial evidence.

### 1. The ALJ's finding that J.S.'s impairments do not functionally equal the listings is not substantially supported.

#### A. Mental limitations

Plaintiff argues in support of her first and second assignments of error that the ALJ's finding that J.S. has "less than marked" limitation in the domain of "attending and completing tasks" is not substantially supported. (Doc. 12 at 5-9; Doc. 17 at 1-2, 5-6). Plaintiff alleges that the ALJ failed to provide valid reasons for discounting the opinion of Dr. Semmelman, who

reviewed the record and opined in June 2009 that J.S. had "marked" limitation in this domain.

(Doc. 17 at 1-2). Plaintiff further argues that the ALJ failed to consider the impact of J.S.'s

anxiety, oppositional defiant disorder, and reactive attachment disorder, which plaintiff alleges

contributed to J.S.'s limitation in the domain of attending and completing tasks and caused a

"marked" limitation in the domain of "caring for yourself." (Doc. 12 at 6-8; Doc. 17 at 4-6).

The Commissioner argues in response that the ALJ properly relied on the opinions of

state agency reviewing psychologists Dr. Meyer (Exh. 2A, Tr. 75-84) and Dr. Lewin (Exh. 4A,

Tr. 86-95) in support of his finding that J.S. has "less than marked" limitation in the domain of

attending and completing tasks. (Doc. 16 at 10, citing Tr. 110-11). The Commissioner alleges

that the ALJ properly accorded "great weight" to the opinions of these reviewing psychologists

because they are familiar with the agency's standards and their opinions are consistent with the

medical evidence. (Doc. 16 at 10). The Commissioner argues that the ALJ properly accorded

the April 2009 opinion of Dr. Semmelman (Exh. 6F, Tr. 469-74) only "some weight" based on

medical evidence showing J.S.'s condition improved after Dr. Semmelman issued her opinion.

(Doc. 16 at 10, citing Tr. 108).

The ALJ's assessment of J.S.'s functional limitations in the domain of attending and

completing tasks is not substantially supported because the ALJ erred in weighing the medical

opinion evidence that relates to this assessment. "The Commissioner has elected to impose

certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931,

937 (6th Cir. 2011). "These standards, set forth in administrative regulations, describe (1) the

various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who

can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that

10

evidence will be evaluated, 20 C.F.R. § 404.1520b." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d

365, 375 (6th Cir. 2013). This evidence may include "medical opinions, which 'are statements

from physicians and psychologists . . . that reflect judgments about the nature and severity of [a

claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and

mental restrictions, and what the claimant can still do despite his or her impairments." *Id.* (citing

20 C.F.R. 404.1527(a)(2)).

    The applicable regulations lay out the three types of acceptable medical sources upon

which an ALJ may rely: treating source, nontreating source, and nonexamining source. 20

C.F.R. §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security

Administration is to give such opinions the most weight and is procedurally required to "give

good reasons in [its] notice of determination or decision for the weight [it gives the claimant's]

treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).

This requirement only applies to treating sources. *Id.* at 876. "With regard to nontreating, but

examining, sources, the agency will simply generally give more weight to the opinion of a source

who has examined the claimant than to the opinion of a source who has not examined him."

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. §

404.1527(d)(1)) (internal citations omitted).

    Here, the ALJ indicated that he relied on the 2011 reports of the state agency reviewing

sources, including Drs. Meyer and Lewin, to find that J.S. has "less than marked limitation" in

the domain of attending and completing tasks. (Tr. 110, citing Exh. 2A (Tr. 75-84), Exh. 4A (Tr.

86-95)). The ALJ did not discuss the content of these reports in his written decision but

evaluated this evidence as follows:

11

> Great weight is given to the analyses at Exhibit 2A [Tr. 75-84] and 4A [Tr. 86-95]
> as based on the objective medical evidence of record, consistent with the medical
> evidence of record overall, consistent with the credible portion of activities of
> daily living evidence, by sources shown to be familiar with the Social Security
> Administration and occupational standards, and not contradicted by any treating
> source shown to be familiar with the Social Security Administration and
> occupational standards, but less than marked is warranted at domain 6 [health and
> physical well-being] as 'marked' was based on reports of limitations by the
> claimant's great aunt, who is found to be less than wholly reliable as a reporter,
> and as less than marked is consistent with current medical evidence of record and
> with activities of daily living evidence.

(Tr. 108). The ALJ also considered Dr. Semmelman's opinion in assessing the level of

impairment in this functional domain. (Tr. 110-111). The ALJ gave "some weight" to Dr.

Semmelman's opinion, but found that "the improvements noted in the medical evidence of

record warrant rejection of the 'marked' rating in the 'attend and complete tasks' section of the

evaluation." (Tr. 108, citing Tr. 469-74; Tr. 111). The ALJ cited the following evidence in

support of his conclusion:

> Specifically, the State Agency examiner noted that St. Agnes Headstart reported
> moderate problems in this domain; including an extremely short attention span,
> the girl was very easily distracted and needed constant supervision to stay on task.
> Dr. Cotton, the claimant's pediatrician stated that the child has ADHD, and that
> she was started on Adderall in the spring, but that she was still hyperactive. Later,
> though, a report from Nationwide Children's Hospital in July 2008 shows that her
> ADHD is well controlled (Exhibit 6F) [Tr. 469-74]. Because of this
> improvement, [the ALJ] find[s] a "less than marked" rating is appropriate in this
> domain.

(Tr. 111).

The ALJ committed several errors in weighing the medical opinion evidence as it pertains

to J.S.'s limitations in the domain of attending and completing tasks. First, the ALJ

misinterpreted the evidence when evaluating Dr. Semmelman's opinion by reversing the

chronology of the medical evidence he cited to demonstrate improvement in this functional

domain. (*Id.*, citing Tr. 469-74). Dr. Semmelman noted that J.S.'s ADHD was reported to be

well-controlled in July 2008; her pediatrician Dr. Cotton reported in October 2008 that J.S. has

ADHD, she was started on Adderall in the spring, but she was still hyperactive as of the date of

his report; and St Agnes Head Start reported that she had moderate problems in this domain in

that she demonstrated an extremely short attention span, she was very easily distracted, and she

needed constant supervision to stay on task. (Tr. 471). Dr. Semmelman did not cite the date of

the St. Agnes Head Start report, but the record shows it was completed on April 30, 2009. (Tr.

210-17). In finding J.S. had demonstrated improvement in the domain of attending and

completing tasks, the ALJ reversed the chronology of the evidence he cited. The ALJ first stated

that Dr. Semmelman noted moderate problems as reported by St. Agnes Head Start; second, Dr.

Cotton reported that J.S. "was started on Adderall in the spring, but that she was still

hyperactive"; and third, a "[l]ater" July 2008 report from Nationwide Children's Hospital showed

that J.S.'s ADHD was well-controlled. (Tr. 111). In fact, the St. Agnes Head Start report issued

in April 2009 postdates both the July 2008 Nationwide Children's Hospital report showing that

J.S.'s ADHD was well-controlled and Dr. Cotton's report stating that J.S. had been started on

Adderall but was still hyperactive. Thus, the evidence cited by the ALJ does not demonstrate

improvement in J.S.'s ADHD symptoms. To the contrary, the evidence shows that J.S.

continued to demonstrate serious issues in this domain. (Tr. 210-17). Further, later records

document that J.S. continued to experience "significant impairment at home and in school due to

anxiety and behavioral concerns" for which therapy was recommended. (Tr. 1105- 5/22/12

Nationwide Children's Hospital Diagnostic Assessment).

Second, the ALJ erred by failing to evaluate the opinions of state agency reviewing psychologists Drs. Lewin and Meyer as required under 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2) ("Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration.]" ).  The ALJ provided a rote recitation of reasons for giving "great weight" to the reports of these psychologists, who found "less than marked" limitation in the domain of attending and completing tasks.  (*Id.*, citing Exh. 2A (Tr. 75-84), Exh. 4A (Tr. 86-95)).  The ALJ stated that these medical sources were familiar with disability standards, their reports were not contradicted by a treating source opinion, and their opinions were consistent with the "medical evidence" and the "credible portion of activities of daily living evidence."  (Tr. 108).  However, the ALJ provided no indication whatsoever in his written decision of the medical and other evidence on which he relied in making this determination.  The ALJ did not discuss any mental health treatment records in his decision with the exception of an unsigned Mental Status Questionnaire, which the ALJ noted listed no abnormal findings.  (Tr. 107-08, citing Exh. 15F (Tr. 887)).  The ALJ could not have reasonably relied on this mental health record, though, because he gave the report "little weight" on the grounds the author and his or her credentials were not identified. (Tr. 108, citing Exh. 15F (Tr. 887)).  Nor did the ALJ discuss any educational records in his decision other than the St. Agnes Head Start report, which the ALJ misconstrued as showing improvement in J.S.'s condition.

14

The Commissioner has offered a number of arguments and has discussed at length medical and other records which purportedly show J.S. has "less than marked" limitation in the domain of attending and completing tasks, while acknowledging the ALJ did not cite this evidence in support of his non-disability determination.  (Doc. 16 at 10-13).  The Court may not accept the Commissioner's *post hoc* rationalization for the ALJ's findings "in lieu of [accurate] reasons and findings enunciated by the [ALJ]."  *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (citing *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).  The ALJ did not adequately explain the reasons for the weight given the conflicting assessments of the state agency reviewing psychologists, nor did he cite any other evidence in his written decision or engage in any additional analysis to support his finding that J.S. has "less than marked" limitation in the domain of attending and completing tasks.[3]  (Tr. 110-111).  Because the ALJ failed to identify evidence that supported his decision to accept the opinions of Drs. Lewin and Meyer over the assessment of Dr. Semmelman with respect to J.S.'s functioning in this domain, the Court cannot meaningfully review the ALJ's decision in this regard.  *See Morris v. Sec'y of Health & Human Servs.*, No. 86-5875, 1988 WL 34109, at *2 (6th Cir. 1988) (although the ALJ is not required to evaluate every piece of testimony and evidence submitted, "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.") (citing *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir. 1984); *Hurst v. Secretary of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir. 1985)).  Accordingly, plaintiff's first assignment of error should be

---

[3] In assessing plaintiff's credibility, the ALJ gave "[s]ome weight" to Dr. Donaldson's consultative evaluation "as based on objective medical evidence of record, with evidence of improvement noted."  (Tr. 108).  The ALJ did not consider Dr. Donaldson's evaluation when assessing the degree of limitation in any functional domain.

sustained insofar as plaintiff alleges that the ALJ erred by finding "less than marked limitation" in the domain of "attending and completing tasks."

Insofar as plaintiff alleges that the ALJ erred by failing to find "marked" limitation in the domain of "caring for yourself," plaintiff has not cited any medical opinion evidence that supports a finding of "marked" limitation in this domain. To the contrary, each of the state agency reviewing sources found "no limitation" or "less than marked" limitation in this area. (Tr. 81, 92, 471). The ALJ did not err by adopting the uncontradicted opinions of these medical sources, which constitute substantial evidence in support of his decision. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (opinions of state agency consultants may be entitled to significant weight when they are supported by substantial evidence) (citing 20 C.F.R. § 404.1527(e)(2)(i)).

### 2. J.S.'s physical impairments

Plaintiff further alleges in support of her first assignment of error that the ALJ's finding that J.S. has "less than marked" limitation in the domain of "health and physical well-being" is not supported by substantial evidence. (Doc. 12 at 4-6, 8). Plaintiff argues that in rendering his finding, the ALJ erroneously declined to adopt the "marked" limitation in this domain assessed in February 2011 on initial review by state agency reviewing physician Dr. Haque (Exh. 2A, Tr. 75-84) and in May 2011 on reconsideration by Dr. Goorey ( Exh. 4A, Tr. 86-94). (Doc. 12 at 5). In response, the Commissioner alleges that the ALJ "discussed state agency physician Dr. Vasquez's opinion that J.S. has a 'less than marked' limitation" in this domain (Doc. 16 at 8, citing Tr. 115, 470, 472), and both Dr. Vasquez and the ALJ noted medical records documenting mild asthma which was generally under good control. (*Id.*, citing Tr. 115, 472, 300-04, 307-08,

312, 315, 324, 330-31, 337, 342-44, 355-57, 367-68, 374, 384, 387, 391-93, 457-58). The
Commissioner alleges that the ALJ was justified in rejecting the opinions of Drs. Haque and
Goorey assessing "marked" limitation in the domain of health and physical well-being as
conclusory and inconsistent with the other medical evidence. (*Id.*, citing *Buxton v. Halter*, 246
F.3d 762, 733 (6th Cir. 2001); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009)).

The ALJ's finding of "less than marked" limitation in the domain of "health and physical
well-being" is not supported by substantial evidence. First, the ALJ made inconsistent findings
in support of his determination. The ALJ cited the assessments of Drs. Haque and Goorey as
support for his finding that J.S. has "less than marked" limitation in this domain. (Tr. 115, citing
Exh. 2A (Tr. 75-84), Exh. 4A (Tr. 86-95)). This is despite the fact that Drs. Haque and Goorey
found "marked" limitation in this domain, a finding which the ALJ acknowledged and rejected
earlier in his written decision. (Tr. 108- the ALJ assigned "great weight" to the 2011 state
agency evaluations *except* insofar as the reviewers found a "marked" limitation in the domain of
"health and physical well-being."). The ALJ did not reconcile his seemingly contradictory
findings in his written decision. His apparent reliance on Drs. Haque and Goorey's reports to
find "less than marked limitation" in health and physical well-being was not reasonable.

Further, the ALJ's reasons for rejecting Drs. Haque and Goorey's rating of "marked"
limitation in the domain of "health and physical well-being" are not supported by the record.
The ALJ found their rating "was based on reports of limitations by [plaintiff], who is found to be
less than wholly reliable as a reporter[.]" (Tr. 108). However, there is no indication in the record
that either Dr. Haque or Dr. Goorey based his or her assessment on plaintiff's reports of J.S.'s
limitations as opposed to objective medical evidence. To the contrary, Dr. Haque noted evidence

of "mild perihilar bronchial wall thickening bilaterally" and five documented emergency room visits over the preceding year due to asthma exacerbations. (Tr. 81). On reconsideration, Dr. Goorey stated that trees and grass had been added to J.S.'s allergy list and "the medical evidence in her file [including 'five documented hospital visits in the past year due to asthma exacerbations'] showed she had severe asthma." (Tr. 93-94). Thus, their reports indicate that Drs. Haque and Goorey based their assessments on the medical records rather than on plaintiff's reports of J.S.'s limitations.

Moreover, in discounting Drs. Haque and Goorey's assessments, the ALJ found that a "less than marked" rating was consistent with the "current medical evidence of record." (Tr. 108). However, the ALJ gave no indication in his written decision that he considered the current medical evidence of record when assessing J.S.'s limitation in the domain of health and physical well-being. The ALJ instead apparently relied on the medical evidence outlined in Dr. Vasquez's 2009 report, which predated Dr. Haque's report by 18 months, and Dr. Vasquez's finding that there was "no evidence of frequent emergency room or inpatient treatments" for J.S.'s asthma. (Tr. 108, 115, 472). The evidence from Dr. Vasquez's report is dated October 2008, November 2008, January 2009, and April 2009. (Tr. 115; *see* Tr. 472). The ALJ did not discuss the more recent objective findings related to J.S.'s health and well-being from 2009 and 2010 which Drs. Haque and Goorey outlined in their 2011 reports. (*See* Tr. 81, 93). Nor did the ALJ discuss whether these more recent findings supported Drs. Haque and Goorey's findings. This evidence included five documented emergency room visits in the preceding year, which led these state agency physicians to conclude in their 2011 reports that J.S. has severe asthma and "marked" limitation in health and physical well-being. (Tr. 81; Tr. 93-94). Because the ALJ inexplicably

18

failed to mention the most recent relevant evidence pertaining to J.S.'s physical health, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *See Morris*, No. 86-5875, 1988 WL 34109, at *2 (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)). *See also Hurst*, 753 F.2d at 519 (quoting *Zblewski*, 732 F.2d at 78) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."). Thus, the ALJ's determination that the assessment of "marked" limitation in the domain of health and physical well-being was not consistent with the "current medical evidence of record" is not substantially supported.

Finally, the ALJ rejected Drs. Haque and Goorey's assessment of a "marked rating" in the domain of health and physical well-being on the ground a "less than marked" rating was consistent "with activities of daily living evidence." (Tr. 108). Again, however, the ALJ failed to identify the evidence that supported his finding. In fact, the ALJ expressly referenced J.S.'s activities of daily living only once in the written decision, noting they were inconsistent with the more severe restrictions asserted by plaintiff. (Tr. 106, citing Tr. 1102). The daily activities noted in the portion of the record cited by the ALJ, a Diagnostic Assessment dated May 22, 2012, were: "plays with dolls, play[s] on computer, takes pictures." (Tr. 1102). It is unclear how these daily activities, or any other daily activities reported in the record, are inconsistent with a rating of "marked" limitation in the domain of health and physical well-being.

For these reasons, the ALJ's finding that J.S. has "less than marked" limitation in the domain of health and physical well-being is not substantially supported. The ALJ's reasoning is contradictory, his findings are internally inconsistent, and the ALJ failed to identify relevant

evidence in his written decision in support of his finding. In arguing that substantial evidence nonetheless supports the ALJ's finding, the Commissioner cites numerous medical records that the ALJ did not acknowledge in his written decision. (Doc. 16 at 8, citing Tr. 300-04, 307-08, 312, 315, 324, 330-31, 337, 342-44, 355-57, 367-68, 374, 384, 387, 391-93, 457-58). The Commissioner also proffers arguments that the ALJ did not make, alleging that the ALJ was not bound by the opinions of Drs. Haque and Goorey because those opinions were conclusory and inconsistent with the other medical evidence. [4] (Id. at 8). The Commissioner also alleges that the ALJ discussed Dr. Vasquez's opinion that J.S. has "less than marked limitation" in the domain of health and physical well-being (Id., citing Tr. 115, 470, 472), when in fact that ALJ made no mention of Dr. Vasquez's report or finding at this portion of the written decision and did not address Dr. Vasquez's rating elsewhere in the decision. [5] As explained above, the Court may not accept the Commissioner's *post hoc* rationalization for the ALJ's findings "in lieu of [accurate reasons and findings enunciated by the [ALJ]." *Keeton*, 583 F. App'x at 524. The ALJ did not adequately explain the reasons for the weight given the state agency reviewing physicians' assessments, nor did he cite any other evidence in his written decision or engage in any additional analysis to support his finding that J.S. had "less than marked" limitation in the domain of health and physical well-being (Tr. 115).

Plaintiff's first assignment of error should be sustained.

---

[4] The Commissioner actually refers to the reviewing physician who assessed plaintiff's physical limitations on reconsideration as Dr. Lewin. (Doc. 16 at 8-9, citing Tr. 86-95). Dr. Lewin is a psychologist. The reviewing physician on reconsideration was Dr. Goorey, a pediatrician. (Tr. 86-95).

[5] The only mention of Dr. Vasquez's report is found at Tr. 108, wherein the ALJ stated: "[S]ome weight, as of the date of the reports, is given to the evaluation at [Tr. 469-74], but the improvements noted in the medical evidence of record warrant rejection of the 'marked' rating in the 'attend and complete tasks' section of the evaluation." (Tr. 108).

### 2. The ALJ's credibility finding is not substantially supported.

Plaintiff alleges that the ALJ's credibility analysis is not supported by substantial evidence. (Doc. 12 at 11-13). Plaintiff argues that the ALJ did not provide specific reasons for the credibility finding which are supported by evidence in the record. (*Id*. at 11, citing SSR 96-7p, 1996 WL 374186, at *2). Plaintiff further alleges that the reasons the ALJ gave for discounting her credibility are not valid. Plaintiff alleges the ALJ misconstrued evidence concerning plaintiff's care of J.S. and whether J.S.'s biological mother was involved in her care. (*Id*. at 12).

Although it is for the ALJ and not the reviewing Court to evaluate the credibility of witnesses, the ALJ must determine the claimant's credibility based on consideration of the entire case record and explain his credibility determination. *Rogers*, 486 F.3d at 247-48. In addition to the objective medical evidence, when assessing the credibility of the claimant's statements the ALJ should consider the individual's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes to alleviate the symptoms; treatment, other than medication, the individual receives for relief of the symptoms; measures other than treatment the individual uses to relieve the symptoms; and any other factors concerning the individual's functional limitations and restrictions due to his symptoms. SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v.*

21

*Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).

Here, the ALJ failed to provide a sufficient explanation for his credibility finding. The ALJ gave several reasons for discounting plaintiff's credibility but failed to identify evidence to support his conclusions. The ALJ stated there were material inconsistencies regarding J.S.'s symptoms and limitations "among reports by the claimant to the [SSA], (including testimony by the claimant's maternal great aunt, [plaintiff], and exhibits 1E through 12E, 14E, 16E, 18E, and 19E), evaluators and treating sources, that erode the reliability of those reports and the credibility of the claimant." (Tr. 106). The ALJ did not identify any such inconsistencies. The ALJ also found there was "significant evidence of exaggeration of [J.S.'s] symptoms and limitations by [J.S.'s] great aunt in her testimony" which diminished the reliability of that testimony. (*Id.*). The ALJ failed to specify any instances of exaggeration. In addition, the ALJ found there was "significant reliance on leading questions that suggested the answers given, particularly with respect to psychological symptoms, which eroded the reliability of that testimony." (*Id.*). The ALJ did not identify the unreliable testimony. In light of the ALJ's failure to provide any explanation of his determination in these three instances, it is impossible to discern the evidentiary basis for the ALJ's conclusion and whether the ALJ's finding is entitled to deference.

In addition, the credibility determination is flawed because the ALJ misconstrued the record in material respects. First and foremost, the ALJ misconstrued evidence related to J.S.'s biological mother's involvement in her care. The ALJ found that: (1) material evidence in the record showed that both plaintiff and J.S.'s mother contributed to the medical history and thus contradicted plaintiff's testimony that J.S.'s mother is not involved in J.S.'s activities of daily

living (Tr. 924-25); (2) the absence of J.S.'s mother from the ALJ hearing was "thus a factor" because it was not clear that plaintiff "has the foundation to report on all of the activities of daily living presented during her testimony, reducing the reliability of that testimony"; and (3) the activities of daily living listed in the Diagnostic Assessment dated May 22, 2012 (Tr. 1102), were inconsistent with the more severe restrictions alleged by plaintiff. (Tr. 106). However, there is no indication in the record that J.S.'s mother had any involvement in J.S's daily activities or in her medical treatment. The "material evidence" on which the ALJ relied to find otherwise was a medical record from September 2011 that notes the "parent/guardian" had an opportunity to ask questions and lists the "informant" as "mother." (Tr. 924-25). There is no indication in these treatment records that the individual providing the information was J.S.'s biological mother rather than plaintiff, who is repeatedly referenced in the medical records as J.S.'s "mom" or "mother." (*See*, e.g., Tr. 330-31, referring to "guardian" as "Mom"; Tr. 551, noting J.S. "[l]ives with 'mom' (not bio-mom but is legal guardian) and 'mom's' mother"; Tr. 1102, noting J.S. "lives with adoptive mother (great aunt) since three days old."). The ALJ erred in interpreting the September 2011 records otherwise.

The ALJ's erroneous interpretation of the treatment records was not harmless. The ALJ discounted plaintiff's credibility based on his erroneous belief that the record contradicted plaintiff's testimony that J.S.'s mother was not involved in her care. (Tr. 106). The ALJ also relied on the same evidence to question plaintiff's familiarity with J.S.'s activities of daily living, even though the treatment notes in question list plaintiff as J.S.'s legal guardian and caregiver since infancy and do not mention any involvement by J.S.'s biological mother in J.S.'s care. (*Id.*). The ALJ improperly discounted plaintiff's credibility for this reason and then compounded

his error by weighing against plaintiff's credibility the absence of J.S.'s mother from the ALJ hearing. (*Id.*).

The ALJ's credibility finding is flawed for additional reasons. The ALJ discounted plaintiff's credibility because he found J.S.'s activities of daily living as reported in the Diagnostic Assessment dated May 2012- i.e., playing with dolls, playing on the computer, and taking pictures (Tr. 1102)- were not consistent with plaintiff's reports of J.S.'s limitations; plaintiff let J.S. shower and sleep with her even though she had been advised to adhere to good sleep hygiene and strict limits; and plaintiff's mother failed to administer medication to J.S. while the child was temporarily in her care. (Tr. 106). The ALJ did not provide a reasonable explanation as to how any of this evidence eroded plaintiff's credibility.

Thus, the ALJ's decision does not include specific reasons for the credibility finding which are supported by the evidence in the record, and the decision is not "sufficiently specific to make clear to [plaintiff] and to any subsequent reviewers the weight the [ALJ] gave to [plaintiff's] statements and the reasons for that weight." *Rogers,* 486 F.3d at 248 (quoting SSR 96-7p, 1996 WL 374186, at *4). Further, the ALJ misconstrued the record in material respects and drew unwarranted inferences such that the credibility finding is not entitled to deference. Accordingly, plaintiff's third assignment of error should be sustained. On remand, the ALJ should reassess plaintiff's credibility.

### III. This matter should be reversed and remanded for further proceedings.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish J.S.'s entitlement to

benefits as of the alleged onset date. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including reevaluation of the opinions of the medical sources of record and J.S.'s functional limitations and reassessment of plaintiff's credibility, consistent with this decision.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 6/4/15

Karen L. Litkovitz
United States Magistrate Judge

25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LISA SHARP, OBO                                    Case No. 1:14-cv-523
J.S., MINOR,                                       Dlott, J.
      Plaintiff,                            Litkovitz, M.J.


     vs.


COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).